Good morning, your honors. Good morning, counsel. Good morning. My name is Inga Parsons and I'm the court-appointed attorney for Mr. Bucci. I would like to reserve four minutes of my time for rebuttal. You may. Thank you. Your honors, the most recent statistics show that all federal criminal cases are resolved by plea agreement. It is an efficient system of justice, but as the Supreme Court has made clear, it is a critical event and requires effective assistance of counsel. In order to challenge the effectiveness of counsel for all intents and purposes, the only avenue for a defendant is a habeas corpus petition under 2255. Direct appeal after the misdreaded case is no longer an option, or at least an ordinary option. A defendant whose attorney is ineffective based on information known to that defendant at the time of a first petition should not have greater rights than a defendant whose attorney is ineffective is only found out after the defendant has filed a first 2255 petition. That sounds like you want us to ignore ADEFA and the time limitations in it and the limitations on second and successive petitions. Not at all, your honor. You better explain. In this case, Mr. Bucci discovered the information after he had filed his first petition and after the ordinary one year. But ADEFA still allows... I'm going to question you about that. On the facts, it doesn't appear that it was within one year. It appears that he confirmed his suspicion, but that he had information earlier than that. And you will agree that if it isn't within one year, the case is over with. Your honor, the confirmation came on the 29th of October. Yes, the confirmation. Yes. But he had information earlier than that, that his counsel had not engaged in plea bargaining despite his request that counsel do so because counsel thought it was a waste of time. Your honor, my understanding is that those earlier conversations were still on that same date and that the government had not shown... But there's no affidavit to that, in fact. Your honor, he says that that's the date that he learned that that, in fact, had happened. That's from Mr. Bucci. And that was dated the 23rd of October of the following year. The interesting thing is that the government has not presented any evidence to the contrary. All of Mr. Bucci's emails are, in fact, part of the government system because they're part of the Bureau of Prisons. Had there been an email that predated that time, that would have been evidence. That has not been shown. To the extent it's a factual issue, which it sounds like it might be, our position is that the facts that are before the court, the of when, in fact, there was a determination. And if you look at the way... Okay, now you've got the problem of the second or successive petition. And, your honor, as the courts have indicated, it is a term of art. And the interesting thing is, well, we know why the government wants it to be a successive petition. Because the standard is much higher and it talks about actual innocence. If you were to find that when you find new information... Your client is not claiming actual innocence. He is not, your honor. He's not. He's claiming ineffective assistance of counsel. That information known to him at that time, if he has to file it as an effective second or successive petition, conceptually, he's then held to a trial standard, not to a plea standard. He's not saying that he's actually innocent. He's saying that his attorney was actually ineffective. And if we were to hold that to that standard, there would be no ability for a defendant who finds out that his counsel was ineffective to challenge that if he's already filed a first petition and the information became known after that petition. That cannot be consistent with constitutional principles. Are you going to discuss Laffler at all? Pardon me? Laffler? Yes. Laffler. In Laffler, there was... the agreement wasn't advised to the client. Here, we have sort of a unique situation. You have a defendant who says to his attorney on more than one occasion, I want you to go and get a lawyer, and says the government doesn't want to bargain. It's different than Laffler, but the concerns are the same. When we have plea agreements, we must make sure that attorneys are doing their job. There are four requirements for Laffler to apply. Would you like to discuss them? In some ways, Laffler is distinguishable from Mr. Bucci. Because Mr. Bucci didn't get an offer. He didn't get the opportunity to have the offer. And when his attorney came back, he told him that there wasn't going to be an offer. So the Laffler factors really are not, and I indicated this in my brief, are really a little bit different here. Because Mr. Bucci wanted to have the offer, but there was no offer that wasn't communicated. Because he didn't get that opportunity. Now, if you look at Laffler, there's good language that talks about the ordinary way that a case is plead out. We know that in the First Circuit and in the District of Massachusetts, that defendants traditionally get three points for acceptance. They don't file an 851 prior to, or they'll dismiss it prior to that. But the gun in this case, which was added on as 84 points consecutive, was not Mr. Bucci's gun. He didn't know there was going to be a gun. It was the co-defendant's gun, who was a police officer in the case. So there were a lot in the ordinary course, which Laffler discusses, that would have been in favor of Mr. Bucci. And that's why we ask this case to be remanded, so that those issues can be discussed to put Mr. Bucci in the same position as if there had not been an effective assistance of counsel. Okay. Thank you. Mr. Cromb, good morning. Good morning. May it please the Court, Randall Cromb on behalf of the government. In the government's view, this case really begins and ends with the requirements on second and successive petitions that were established by ADEPA. The District Court should not have ever acted on it in the first place. The District Court receives a motion like this that is facially, in this case the third, called it 2255. It should have transferred it to this Court to see if it fell with any of the exceptions. And really, that would have been the end of its work on the matter. So that's what our primary argument is, simply that's the end. It didn't follow the procedural requirements. And although this Court can consider an erroneous application in the District Court as an application to this Court, even treating it that way, it has to fail because it doesn't fall within the requirements that the statute sets out. As the defendant has made clear, there's no claim of innocence, but that is the only kind of newly discovered evidence claim that ADEPA chose to carve out. They were very specific that it's newly discovered evidence that points to innocence and not other kinds of newly discovered evidence. And the few courts that have addressed claims like this, which are claims related to plea agreements where the error occurred at the time of trial, but was found out later, have found that that is not an exception, does not fall within the exceptions. So in our view, that's a fairly simple case. What about Padilla? Well, Padilla is, for one thing, it has to be a constitutional case that has been made retroactive on collateral review in order to provide a basis under the other prong of the gatekeeping provisions. And this one, in Chayadez, the Supreme Court specifically said it's not retroactive. So that kind of ends that as a particular basis that could take it outside of the requirements of Seconded Successive. I think there was some discussion with respect to Lafler, and I do just want to reiterate, in our view, the defendant here stands even in a worse position than the defendant in Lafler because there was an actual plea that had been negotiated, and the question was that it hadn't been communicated. Then there were four more steps the person still had to show to show that they were prejudiced. Here, you didn't even get that far, and we cite to the Metzenbach case from the Fourth Circuit and Ramirez from the Eighth Circuit, saying when there's just been preliminary discussions, you don't even get in the door of the Lafler inquiry because you've even got less to go on to be able to prove that you would have had a beneficial agreement if the attorney had done what you said he should have done. Your Honor, if you don't have any further questions, we're allowing a brief for the rest of the argument. Thank you. Ms. Parsons, I think you have four minutes. Thank you, Your Honor. The government never raised the issue of whether this was a Second or Successive petition after Judge Young had issued his I thought through that, Your Honor. The notion of whether it's Second or Successive that might affect jurisdiction is one thing, but the declaration of it as a Successive petition should have been challenged by the government. So it's like you have to do a two-part test. It was not given time. Judge Young just got this thing in and decided to dispose of it without consulting either one of you. Your Honor, that's what Rule 60 is for. They could have gone back to the court very easily and made that determination because it certainly affected how Mr. Bucci proceeded in the case. And in a way, I would be sitting here on the opposite side and waivers should go both ways if this is a waiver of that So this is the first opportunity the parties have had to fully brief the issue and present it to us. And as Judge Torea says, it is a jurisdictional question for us. Yes. Why don't you make that finding? But I still maintain that the government should have argued that below. But aside from that, the Mr. Bucci would likely have taken, it's a reasonable probability, Mr. Bucci would have taken a reasonable plea. Reasonable pleas were being offered in cases. Lafler, the reason why Lafler doesn't trigger in is because there was no plea. It wasn't even preliminary negotiations. We're focusing more on was there a plea. What we need to focus on is what was counsel doing in this case? We know from the government that he didn't approach them for any sort of negotiation. This was a case that lent itself to a plea negotiation. It was not reasonable and it wasn't strategic not to do that. So there's really two levels of ineffectiveness. The first level is not going to the prosecutor and saying, what can we do to resolve this? The second level. It's still hard to figure out. ADEPA has these two exceptions. And the way the statute is set up, the way the statute is set up, Congress seemingly intended to restrict prisoners' rights. Yes, but not if the facts were not known. I don't think Congress ever thought that. I think what Congress thought was that if you had the facts known to you and you didn't make the application, sure, he would be out. No doubt about it. But when you do know the facts, you shouldn't have to come and do it. Not only an impossible standard, in a way, because you're asking to plead guilty, but it's a standard that basically eviscerates the notion of being able to challenge an effective assistance of counsel. And I don't see ADEPA preventing that. I understood you to be conceding that these are the ADEPA requirements, but you were suggesting that it would have to be unconstitutional if it's read that way. That's a very different argument. No, it depends on whether or not you are, you accept the law, which appears to be that determining what is a successive versus second petition. Here, our position is that conceptually this is in the same status and procedural posture as a first petition. And courts have accepted that. Because if you look at what the purpose of this is, is to police and to effect justice for a person who has had clearly ineffective assistance of counsel. Not just because he didn't ask for the plea, but then he came back and told him that the government was not interested. And based on that, Mr. Butte went to trial and received an exorbitant sentence because of it. So we ask that it be vacated. Thank you. Thank you, Your Honors.